UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER NOWLIN, | ) | Civil Action No.: 4:10-1857-JMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| LAKE CITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.     INTRODUCTION**

In this action, Plaintiff[1] brings claims for race discrimination, hostile working environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq.[2]  Presently before the Court is Defendant's Motion for Summary Judgment (Document # 35).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

_____

[1]Plaintiff has filed two previous employment discrimination actions in this court arising out of his employment with different employers.  See  Nowlin v. Civigenics, C.A. No. 2:04-cv-02495-CWH-GCK; Nowlin v. Pee Dee Mental Health Center et al., C.A. No. 4:07-cv-03676-RBH-TER.

[2]Plaintiff also included a cause of action for violation of the Fair Labor Standards Act in his Amended Complaint.  However, Plaintiff abandons this claim in his Response.  Plaintiff's Response pp. 26-27.

## II.     FACTS

### A.     Lake City Municipal Court

Plaintiff's claims arise out of his position as a municipal court judge with Lake City.  Thus, an understanding of Lake City, its Municipal Court and the municipal court system in general is necessary.  Lake City has a mayor-council form of government.  Whittleton Affidavit; S.C. Code Ann. § 5-9-10 et seq. Lake City's Mayor is African American, as are four of its six City Council members. Plaintiff Dep. pp. 54, 61.  Lake City's City Council has the authority to appoint one or more municipal court judges.  S.C. Code Ann. § 5-7-230.  Even though municipal court judges are appointed by municipalities, the municipal court is part of South Carolina's unified court system and answerable to the South Carolina Supreme Court.  S.C. Code Ann. § 14-25-5; see Jean H. Toal et al., Appellate Practice in South Carolina 1 (2d ed. 2002) ("South Carolina's unified judicial system encompasses the following courts: ... (7) municipal courts."). The Lake City municipal court has jurisdiction over cases arising under ordinances of the municipality and over all offenses that are subject to a fine not exceeding $500 or imprisonment not exceeding 30 days, or both.  S.C. Code Ann. § 14-25-65. A municipal court judge serves a term of not less than two years but not more than four years, and is subject to removal by the South Carolina Supreme Court. S.C. Code Ann. § 14-25-15, S.C. Const. Art. V, § 17.

In the fall of 2006, both Lake City's full-time municipal court judge, Mamie Harris (African-American), and part-time municipal court judge, DiAnn Hood (white), resigned.  Plaintiff Dep. pp. 120-21.  The resignation of both municipal court judges  left Lake City without any judges. Plaintiff Dep. pp. 121-22.  As a result, Lake City asked John Kirven, an attorney and experienced municipal court judge, to assist the city. Kirven Dep. pp. 16-17.  Kirven's private practice rate was

$125 per hour. Plaintiff Dep., D. Ex. 21. As early as September 2006, Kirven began billing Lake City $100 per hour for his services as a municipal court judge. Plaintiff Dep., D. Ex. 22. Kirven also served as a municipal court judge in the South Carolina towns of Coward, Scranton, Quimby, and Johnsonville. Kirven Dep. pp. 15-16. The rate he charged Lake City was similar to the one he charged other municipalities. Kirven Dep. pp. 15-16. Because he was an independent contractor and not an employee, Kirven did not sign a job description or have a personnel file. Williams Dep. p. 9.

### B.    Plaintiff's Employment as Lake City Municipal Judge

In 2006, Plaintiff sought a position as a municipal court judge with Lake City. Plaintiff Dep. pp. 15-16. The application Plaintiff completed stated the position was a full-time position. Plaintiff Dep., D. Ex. 11. Plaintiff knew he was seeking a full-time position and wanted to replace his previous job at Pee Dee Mental Health. Plaintiff Dep. pp. 43-45. Lake City's City Council appointed Plaintiff to a two-year term as a municipal court judge on September 12, 2006. Plaintiff Dep. pp. 17-20 and D. Ex. 1. However, Plaintiff did not begin serving as a municipal court judge until November 1, 2006. Plaintiff Dep. p. 20. Plaintiff testified in his deposition that the reason for the month and a half "gap of time" between his appointment and his beginning to work was "[b]ecause I was working at Pee Dee Mental Health at the time . . . You have to give notice at the other job and I was still working at Pee Dee Mental Health at the time." Plaintiff Dep. pp. 20-21.

When hired, Plaintiff was required to sign several documents related to his employment including Terms of Employment, Receipt of employee handbook, Disclaimer, Policy Statement, Acknowledgment of City of Lake City's Equal Employment/Anti-Harassment and Anti-Sexual Harassment Policies, Alcohol and Drug Testing Policy, Employee Acknowledgment of Training, Employee Acknowledgment of Drug-Free Workplace Act, Receipt of Company Substance Abuse

Policy, City of Lake City Acknowledgment and Authorization for Alcohol/Drug Testing, Resolution 2008.225, and Employee Statement. Ex. 2 to Plaintiff's Response. Plaintiff was provided with a job description, which stated, in part, "The City of Lake City reserves the right to modify, interpret, or apply this job description in any way." Job Description (attached as Ex. 3 to Plaintiff's Response). The job description set forth the essential functions of the position, including to hold city court, both traffic and criminal, hold bond hearings, sign bench warrants and issue all city and general sessions warrants, supervise all clerical positions of the court, assist officers and citizens with inquiries pertaining to the law and hold preliminary hearings and jury trials. Id.

Plaintiff is not an attorney, and, prior to his service as a Lake City municipal court judge, had no experience as a judge. Plaintiff Dep. pp. 27, 46. As a municipal court judge, Plaintiff issued search warrants and arrest warrants and set bonds. Plaintiff Dep. p. 89. Plaintiff heard criminal cases including petty larceny, larceny, criminal domestic violence, and driving under the influence. Plaintiff Dep. p. 94. Plaintiff sentenced individuals before him and could suspend a sentence when he believed it proper. Plaintiff Dep. pp. 95-96; S. C. Code Ann. § 14-25-75. Plaintiff was also called upon to apply South Carolina common law. Plaintiff Dep. pp. 95-96. These duties required Plaintiff to exercise a great deal of discretion and make independent choices. Plaintiff Dep. p. 98. With regard to his duties, Plaintiff testified: "Everything I do [has] to be thought out . . .." Plaintiff Dep. p. 92.

When Plaintiff first began his service as a Lake City municipal court judge, the city's liaison with him was the city administrator, Marion Lowder, who is white. Plaintiff Dep. pp. 61-62. Lake City hired John Whittleton, an African American, in August 2007. Plaintiff Dep. p. 70. After Whittleton was hired, he became the city's liaison with Plaintiff, and Plaintiff rarely encountered Lowder. Plaintiff Dep. pp. 65-68. Plaintiff was a salaried employee, receiving the same bi-weekly

-4-

salary.  Plaintiff Dep. p. 70.  Because Lake City treated him as an exempt, salaried employee, he received the same salary regardless of the number of hours he worked. Plaintiff  Dep., D. Ex. 14. Plaintiff's starting annual salary, which was set by City Council, was $33,009.   Plaintiff Dep. p. 69, D. Ex. 13. After two raises, his ending salary was $35,048. Plaintiff Dep. p. 69; D. Ex. 13. Plaintiff kept a record of hours he worked over 40 hours per week for his first nine months of service as a municipal court judge, from November 2006 to August 2007.  Plaintiff Dep., D. Ex. 15.  During that time – according to Plaintiff's records – he worked roughly two or three hours per week beyond 40 hours.  Plaintiff Dep., D. Ex. 15.  Following John Whittleton's hiring in August 2007, Plaintiff no longer worked more than 40 hours per week.  Plaintiff Dep. pp. 70-74.  On January 13, 2009, Lake City City Council appointed Plaintiff to a second two-year term as a municipal court judge.  P. Dep., D. Ex. 3.

During an interview with the EEOC, Plaintiff indicated that he was called to the office of Marion Lowder to have a meeting[3] with Lowder, Attorney Jimmy Epps and Chief Billy Brown.  EEOC

---

[3]Defendant argues that this meeting is outside the scope of his Charge of Discrimination because it occurred more than 300 days prior to the filing of his Charge.  To pursue a Title VII claim, a plaintiff must "file a complaint with the EEOC within 180 days of the incident, or within 300 days of the incident if state or local proceedings are initiated." Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir.1997); 42 U.S.C. § 2000e-5(e) (1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).  However, behavior alleged outside of the statutory time period may be considered "for the purposes of assessing liability, so long as an act contributing to the hostile environment takes place within the statutory time period ." Morgan, 536 U.S. at 105. Hostile environment claims occur over a series of days or perhaps years; a hostile environment claim is based upon the cumulative effect of individual acts. Id. at 115. "In order for a claim to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." Id. at 118.  Thus, to the extent Plaintiff alleges other acts of harassment that occurred within 300 days of the filing of his Charge, it is proper to consider this meeting.

File (attached as Ex. 6 to Plaintiff's Motion).[4]  In that meeting, Plaintiff was informed that he would be required to work every other weekend. Plaintiff informed Lowder that he did not feel that was fair because of the other work duties required of his position and the fact that Plaintiff was required to work seven days straight for several months due to the problems with the judicial department. Lowder informed Plaintiff that he would work every other weekend and that was final.  Plaintiff informed Lowder that he felt that Lowder was accommodating Kirven because he was white, a judge, and an attorney.  Plaintiff further informed Lowder that it was discrimination and unfair.  EEOC File. Plaintiff also indicates during the interview that after making the complaint regarding discrimination the Plaintiff's budget was reduced and the finances given to the finance department, Belinda Roger, a white female.  EEOC File.

Defendant created a finance/judicial position with the funds from Plaintiff's departmental budget. The person hired for the position was William Hall (White Male). Belinda Rogers hired William Hall for both departments. Plaintiff did not hire William Hall. William Hall refused to follow Plaintiff's instructions.  Plaintiff was refused the power and control to discipline Hall for actions that violated the Employee Standards of Conduct.  EEOC File. Hall submitted his resignation. However, Lowder permitted Mr. Hall to work in the Finance Department with no repercussions for his actions. After the incident with Mr. Hall, Plaintiff complained that Mr. Lowder was not permitting Plaintiff to discipline white staff that worked in his department.  EEOC File.  Plaintiff was denied a full time staff in the Judicial Department where a white person in the Finance Department was permitted a full time staff.  EEOC File.

---

[4]The undersigned notes that the EEOC file contains notes of an interview of Plaintiff conducted by someone with the EEOC.

During Plaintiff's service as a Lake City municipal court judge, there were a number of complaints filed by various individuals against Plaintiff and concerns about his performance:

• In October 2007, an attorney complained to South Carolina Court Administration concerning Plaintiff's denying bond without giving the attorney notice that the bond hearing was taking place. Plaintiff Dep., D. Ex. 43.

• In July 2009, relatives of a defendant who appeared in Plaintiff's courtroom complained that Plaintiff "was the most unprofessional, inarticulate, inconsiderate, condescending person we have ever witnessed holding a position of that magnitude." Plaintiff Dep., D. Ex. 41.

• Lake City's auditors expressed concerns in 2008 and 2009 that Lake City's judicial department, which Plaintiff supervised, was over-staffed, was refunding 9% of police fines, and was failing to ensure fines were reported and remitted to the State properly. Plaintiff Dep., D. Ex. 49.

• On a performance evaluation dated January 21, 2009, John Whittleton expressed a need for Plaintiff to "make efforts to improve relations between his department and other departments within the City government." Plaintiff Dep. , D. Ex. 26.

• Circuit Court Judge Michael Nettles – to whom Plaintiff's orders were appealable –"said he was going to lock [Plaintiff] up if I didn't do [an] Ishmell[5] order." Plaintiff Dep. p. 150.

Plaintiff described his relationship with the Lake City police department as follows:

> I think it was a good relationship when they didn't come to me to do crooked stuff. Other than that it was a good relationship. When they found out I wouldn't do no crooked stuff that when it became a bad relationship. They want you to do stuff, they want you to do stuff, they want you to do this, do that and that's it.

---

[5]See S.C. Code Ann. § 14-25-95; Ishmell v. South Carolina Highway Dept., 215 S.E.2d 201 (S.C. 1975).

Plaintiff Dep. p. 134.

There were two incidents in particular wherein Plaintiff has testified he was asked to do what he believed to be "crooked stuff." Plaintiff claims he was asked to issue a "PR bond" for an individual named Lee Ann Fagan: "Marion [Lowder] called me to his office and asked me was I going to give her a PR bond on two burglary charges."  Plaintiff Dep. p. 184. Plaintiff testified that Lake City officials asked him to issue that bond because Fagan's relatives " know those people in the city, because they have a business there and they wanted me to break the law and go from there."  Plaintiff Dep. pp. 77-78.  Plaintiff refused to issue the PR bond. Plaintiff Dep. pp. 77-78.  The next incident Plaintiff believed constituted his being asked to perform an illegal act occurred when assistant city administrator John Whittleton asked Plaintiff "to dismiss [for Gwendolyn Ranson] these drug charge, all these possession of drug charges, in preliminary hearing," and Plaintiff refused.  Plaintiff Dep. p. 81.

Lake City City Council voted on January 18, 2011 not to reappoint Plaintiff as a municipal court judge.  Plaintiff Dep., D. Ex. 31.  Kenneth Burgess, an African American, was appointed to fill Plaintiff's position.  Plaintiff Dep., D.Ex. 31; Whittleton Affidavit.  During an interview Plaintiff gave following that vote, he stated "that he felt council would not reappoint him, even if he hadn't sued the city" and that "[y]ou have to be controlled to work there."  Plaintiff Dep., D. Ex. 32.  Plaintiff verified that the statements he made during that interview were accurate, and that he was not reappointed because he refused to be controlled by Lake City officials in the Fagan and Ranson incidents described above.   Plaintiff Dep. pp. 154.

### C.    Plaintiff's Charges of Discrimination/Retaliation

In June 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Lake City, alleging that he was paid less than Judge Kirven.  Plaintiff Dep., D. Ex. 4. In October 2009, Plaintiff filed a second charge of discrimination against Lake City, claiming that he was being retaliated against for filing his first charge because two members of the public had filed a complaint against him with the Commission on Judicial Conduct.  Plaintiff Dep., D. Ex. 7.  On April 19, 2010, the EEOC issued Plaintiff a no cause determination and a Notice of Rights as to his first charge of discrimination.  Plaintiff Dep., D. Ex. 6. Plaintiff filed suit against Lake City on July 16, 2010.  On September 27, 2010, the EEOC closed its investigation into Plaintiff's second charge of discrimination against Lake City because he had "filed suit in court with same allegations." Plaintiff Dep., D. Ex. 8.  On February 7, 2011, Plaintiff filed two more charges of discrimination against Lake City, the first claiming retaliation over the fact that he was not reappointed, and the second claiming Whittleton retaliated against Plaintiff by criticizing him for not being a team player, calling his doctor to verify a medical excuse, and requiring Plaintiff to train Burgess as a municipal court judge.  Plaintiff Dep., D. Ex. 9, 10.  Plaintiff asserts the allegations in those charges are part of this lawsuit.  Plaintiff Dep. p. 39.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    Exemption from Coverage under Title VII

Defendant argues as a threshold issue that Plaintiff, in his position as a municipal court judge, is exempt from coverage under Title VII's policy-making exemption.  Both statutes provide the same exemption:  "[t]he term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include . . . an appointee on the policy making level." 42 U.S.C. § 2000e(f).  Plaintiff is "not protected under Title VII " if he "fit[s] within the statute's exclusion" from the definition of "employee." Cromer v. Brown, 88 F.3d 1315, 1317 (4th Cir. 1996).

In Gregory v. Ashcroft, 501 U.S. 452 (1991), the Supreme Court addressed an identical policy-maker exclusion in the Age Discrimination in Employment Act (ADEA).  The Court determined that a Missouri state court judge likely served on a policy-making level[6] and, thus, was exempted from protection under the ADEA.  Id. at 470.  Recently, this court has applied Gregory in finding a municipal court judge to be exempted under Title VII.  In Spann-Wilder v. City of North Charleston, No. 2:08-156-MBS, 2010 WL 32222235 (D.S.C. Aug. 13, 2010), the plaintiff, a former municipal court judge, alleged, inter alia, causes of action for race and gender discrimination and retaliation in violation of Title VII as well as violation of the Equal Pay Act.  As to the plaintiff's Title VII and EPA claims, District Judge Margaret Seymour determined that the threshold issue was "whether Plaintiff, as a public officer, also meets the definition of "employee" for purposes of the causes of action set forth in the complaint."  Id. at *1.  The court held in abeyance a decision on the merits of the plaintiff's claims pending a resolution to the issue of the plaintiff's status as an employee.  Id.

---

[6]"The statute refers to appointees "on the policymaking level," not to appointees "who make policy." Gregory, 501 U.S. at 466.

Judge Seymour discussed the holding in Gregory:

> [T]he [Supreme] Court recognized that state judges arguably make policy in fashioning and applying the common law. The Court recognized that "the common law, unlike a constitution or statute, provides no definitive text; it is to be derived from the interstices of prior opinions and a well-considered judgment of what is best for the community." The Court also noted that the policy-making exception may not require that judges actually make policy. Instead, the Court stated that it might be sufficient that a judge "is in a position requiring the exercise of discretion concerning issues of public importance," which the Court noted is the function of judges . . . . [W]hile the Gregory decision did not definitively rule that state judges fall within the policy-making exemption, it implied that such a holding was supportable based upon state judges' application of the common law.

Id. at *4.  The court noted that the Fourth Circuit had not ruled on the scope of the policy-making exception, but other Circuit courts had.  Id. at *5.  The First and Eighth Circuits have ruled that appointed state judges are appointees on a policy-making level and, thus, are exempt from the protections of the ADEA. Id. at **5-6 (discussing EEOC v. Massachusetts, 858 F.2d 52 (1st Cir.1988) and Gregory v. Ashcroft, 898 F.2d 598, 603 (8th Cir.1990) (Gregory II).  The First Circuit explained,

> [i]t is ... clear that "policymaking" is indisputably a part of the function of judging to the extent that judging involves lawmaking to fill the interstices of authority found in constitutions, statutes, and precedents (a function more predominant in appellate judging than in the performance of trial judges, who are of course, the group whose interests plaintiff EEOC seeks to protect in this litigation). Moreover, the substantive interest identified by the phrase "on the policymaking level" is closely aligned with an interest referred to by phrases such as "exercise of discretion" and "exercise of judgment," which are indisputably descriptive of most of the performance of those persons within the judicial branch who serve as judges (including trial judges).
>
> ...
>
> This judicial type of policymaking is unlike that done in the executive and legislative branches of government. It nevertheless requires the same kind of decision-making, and the same kind of forward thinking that is required of "appointees on the policymaking level" in those other two branches of government. And it certainly concerns state government to a similar degree.

-12-

Massachusetts, 858 F.2d at 54-55.  See also Gregory II, 898 F.2d at 601-02 (stating "judges must exercise the same sort of discretion in decisionmaking, temper their rulings with the same sort of self-restraint, and engage in the same sort of thoughtful judgment that is required of "appointee[s] on the policymaking level" in the executive and legislative branches").

"The Second Circuit, on the other hand, has ruled that state judges do not fall within the policy-making exception to the definition of employee." Id. at *6; E.E. O.C. v. Vermont, 904 F.2d 794 (2d Cir.1990).  In Vermont, the Second Circuit concluded that "for an individual to be an appointee on the policy making level, the individual must have been appointed by an elected official and must work closely with the appointing authority." Spann-Wilder, 2010 WL 3222235 at *6 (citing Vermont, 904 F.2d at 800).  Judge Seymour noted that the "majority of circuits that have ruled on the issue do not require individuals on a policy-making level to have a close working relationship with the elected official who appointed them and therefore find that state judges are appointees on a policy-making level." Id. (citing Gregory, 898 F.2d 598; EEOC v. Massachusetts, 858 F.2d 52; EEOC v. Bd. of Trustees of Wayne County Cmty. Coll., 723 F.2d 509, 511 (5th Cir.1983) (finding that the president of a community college was excluded from the protections of the ADEA because such an individual is an appointee on a policy-making level); see also Stitz v. City of Eureka Springs, 9 F.Supp.2d 1046 (W.D.Ark.1998) (finding that a Chief of Police, who does not have a close working relationship with the elected mayor that appointed her is an appointee on a policy-making level, falling outside of Title VII's protections)).

Judge Seymour found the reasoning of the First and Eighth Circuits to be persuasive.  She stated:

In presiding over criminal domestic violence cases, Plaintiff necessarily exercised discretion

in making her rulings. In addition, because much of the criminal law in South Carolina is common law and not codified in statutes, Plaintiff likely would apply the common law in her position. Based upon the foregoing, the court concludes that Plaintiff is an appointee on a policy-making level and is exempt from the protections of Title VII and the EPA. As a result, Plaintiff's Title VII and EPA claims are dismissed with prejudice.

Id. at *7.

In the present case, Plaintiff held the same position as that held by the plaintiff in Spann-Wilder. Plaintiff testified that he issued search warrants and arrest warrants, set bonds, sentenced individuals before him and could suspend a sentence when he believed it was proper. He also testified that the municipal court judgeship required the use of discretion and good judgment.

Plaintiff argues that he does qualify as an employee under Title VII pursuant to the factors set forth in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996). In Cromer, the Fourth Circuit addressed another exemption from the definition of employee under Title VII–the personal staff exclusion. Cromer, 88 F.3d at 1322; see also 42 U.S.C. § 2000e(f) (excluding "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on the officer's personal staff...."). The factors set forth in Cromer are specifically tailored to aid in determining whether an individual qualifies as "personal staff" and not, as Plaintiff would suggest, for determining generally whether an individual is an employee. Cromer, 88 F.3d at 1323-25. Thus, the undersigned disagrees with Plaintiff that the relevant "test" for determining whether Plaintiff is exempted from the protections of Title VII is that set forth in Cromer.

Plaintiff also argues that the present case is distinguishable from Spann-Wilder. He argues that he was required to administer the law according to the books given to him.[7] However, he testified that

---

[7]Although Plaintiff points to no citation in the record to support this argument, it is noted that in his deposition he states,

-14-

as a judge he had the authority to make independent choices and that his position required him to exercise his discretion and use a lot of thought.  Plaintiff also argues that his case is distinguishable because Plaintiff did not possess a close intimate relationship with the policy makers who approved his hiring.  However, Judge Seymour specifically rejected this factor.  Spann-Wilder, 2010 WL 3222235, at *6 ("Thus, the court concludes that the policy-making exemption may apply even when there is no close working relationship between Plaintiff and Defendant as with municipal judges and the public officials who appoint them.").  Finally, Plaintiff argues that the City Administrator had control over Plaintiff's employment and, thus, Plaintiff does not fall under the policy-making exceptions.  However, the issue turns not on who had control over Plaintiff's employment but rather the discretion Plaintiff had in exercising the judicial functions of his job.  Plaintiff's job is akin to that of the plaintiff in Spann-Wilder, and, in accord with that case, Plaintiff falls under the policy-maker exclusion to the definition of employee in both Title VII.  Therefore, the undersigned recommends that Defendant's Motion for Summary Judgment be granted.

Should the district judge disagree that Plaintiff falls within the policy-making exemptions of Title VII, the merits of Plaintiff's claims are discussed below.

**B.      Race Discrimination**

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race. 42 U.S.C. §

---

One thing I did, I did the job and that's on any job I go on.  I'm going to do the job, because you have a policy book that you have to go by that the employer give you. That policy book is what can help you keep your job and also if you go out of the parameters, it can have you fired.  One thing I do, I read them policy books and read everything.  I know what they can do and I know what they can't do.  I already know that.

Plaintiff Dep. p. 89.

-15-

2000e-2(a). In the absence of direct evidence of discrimination, courts apply the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[8] Under the <u>McDonnell Douglas</u> framework, Plaintiff has the initial burden of establishing a <u>prima facie</u> case of discrimination. To establish a <u>prima facie</u> case of racial discrimination, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside the protected class received more favorable treatment. <u>White v. BFI Waste Services, LLC</u>, 375 F.3d 288, 295 (4th Cir. 2004). The fourth element can also be established by presenting evidence raising an inference of discrimination. <u>See</u> <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 486-87 (4th Cir.2005); <u>EEOC v. Sears Roebuck & Co.</u>, 243 F.3d 846, 851 n. 2 (4th Cir.2001) (citing <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

If Plaintiff establishes a <u>prima facie</u> case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination <u>vel non</u>." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000)(citing <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716 (1983). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true

---

[8]The McDonnell Douglas analysis was refined in <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

-16-

reasons, but was pretext for discrimination.  <u>Reeves</u>, 530 U.S. at 143.  Throughout the burden shifting scheme set forth in <u>McDonnell Douglas</u>, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff.  Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

In its Motion for Summary Judgment, Defendant addresses a claim for disparate pay.  Plaintiff alleges in his Amended Complaint that he was paid differently from other employees based on his race.  Amended Complaint, ¶¶ 35-36.  Plaintiff also testified in his deposition that he brought a claim for disparate pay.  Plaintiff Dep. p. 155.  However, Plaintiff argues in his Response that he never raised a claim for disparate pay, but rather that he suffered racial discrimination in that he was the head of the judicial department and was not permitted to make any decision regarding his department while a white individual, Belinda Rogers, was allowed to make all decisions regarding her department.  He also argues that Kirven was paid more per hour and was allowed to set his own schedule while he was not.  Plaintiff raises these claims for the first time in his Response.  "A party is generally not permitted to raise a new claim in response to a motion for summary judgment."  <u>White v. Roche Biomedical Labs., Inc.</u>, 807 F.Supp. 1212, 1216 (D.S.C. 1992).  However, assuming this claim is properly before the court, Plaintiff fails to present sufficient evidence to defeat summary judgment.

Plaintiff fails to show Kirven was either similarly situated to or treated more favorably than Plaintiff.  Kirven is a licensed attorney and experienced municipal court judge. Kirven Dep. pp. 16-17.  Kirven served as a municipal court judge in the South Carolina towns of Coward, Scranton, Quimby, and Johnsonville. Kirven Dep. pp. 15-16. He charged Lake City a rate similar to the one he charged other municipalities. Kirven Dep. pp. 15-16. Kirven's private practice rate as an attorney was $125 per

-17-

hour, but he billed Lake City $100 per hour for his service as a municipal court judge. Plaintiff Dep., D. Ex. 21. Lake City paid Kirven $100 per hour because he was a licensed attorney. Whittleton Affidavit. In contrast, Plaintiff is not an attorney and, prior to his service as a Lake City municipal court judge, had no experience as a judge. Plaintiff Dep. pp. 27, 46.

Additionally, Plaintiff and Kirven held different positions. Kirven was an independent contractor working five to fifteen hours per month and receiving no benefits. Williams Dep. p. 9; P. Dep., D. Ex. 22; Whittleton Affidavit. Plaintiff was a salaried full-time municipal court judge working forty hours and receiving benefits. Plaintiff Dep. pp. 75-76 and D.Ex. 16. Based upon the record presented, Plaintiff and Kirven were not similarly situated and, thus, Plaintiff fails to establish a prima facie case of discrimination. See, e.g., Taylor v. ADS, Inc., 327 F.3d 579, 581 (7th Cir. 2003) ("[Plaintiff] must show that similarly situated non-black employees were treated more favorably than he was. But the only potential comparative plaintiffs point to, a white male [who] is not an employee; he is an independent contractor.") (citation omitted); Ahern v. Shinseki, 2009 WL 1615402, *2 (D. R.I. June 9, 2009) (holding that it was "beyond dispute that Plaintiffs, as employees, were not similarly situated to the [independent contractors]"); Barbour v. United Beechcraft, 1998 WL 803417, *6 (N.D. Ill. Nov. 10, 1998) (holding that independent contractor and plaintiff-employee "are simply not similarly situated and it is impossible to compare the two").

However, even if Plaintiff and Kirven were similarly situated , Plaintiff fails to show that Kirven was treated more favorably than Plaintiff with respect to his compensation. Although Kirven was paid more per hour than Plaintiff, as stated above, Kirven worked only part-time and received no benefits. Defendants present evidence that Kirven's total compensation during the two years and eight months he served as municipal court judge was $40,495, Plaintiff Dep. D.Ex. 23, while Plaintiff's

-18-

compensation for his first two years and eight months as municipal court judge totaled $92,040. Plaintiff Dep., D.Ex. 14.

Further, Plaintiff fails to show that he was treated differently from Rogers, the head of the finance department. He argues that he was not permitted to set the schedule for his department or discipline the employees in his department while Rogers was permitted to make any and all decisions regarding her department. Plaintiff's Response p. 17. He asserts the he was not allowed to set Kirven's schedule nor was he allowed to discipline Hall, an employee in both the judicial and the finance department, because he was not allowed to fire him when he was insubordinate toward Plaintiff. However, other than his arguments, Plaintiff has not presented evidence to show that Rogers was allowed these duties. Plaintiff points to no evidence in the record that Rogers was allowed to control the schedule of an independent contractor like Kirven. In addition, Lowder avers that Rogers did not have the authority to fire employees. Lowder Affidavit (attached as an exhibit to Defendant's Reply).

For these reasons, Plaintiff fails to establish a prima facie case of disparate treatment. Nevertheless, even if Plaintiff could establish a prima facie case, Plaintiff cannot show that Defendant's reasons for its actions are pretextual for discriminatory reasons. Plaintiff was not allowed to control Kirven's schedule because Kirven was not an employee but an independent contractor, Defendant paid Kirven $100 per hour because he was a licensed attorney, and no other department heads are allowed to terminate employees within their departments. Plaintiff fails to present sufficient evidence to show that these were not the real reasons but pretext for discriminatory reasons. Plaintiff argues that "[p]retext can be established by the Defendant's own failure to follow policies and procedures. The Defendant clearly has an anti-harassment policy that requires the plaintiff to report

-19-

any inappropriate actions. The Plaintiff did so. The Defendant failed to handle the complaints."Assuming for the sake of this motion, Plaintiff's assertion is correct, a failure to follow policies and procedures alone is insufficient to show pretext. Duggan v. Sisters of Charity Providence Hospitals, 663 F.Supp.2d 456, 470 n.6 (D.S.C. 2009) (declaring that while failure to follow procedure "could establish unfairness in the process, it is not probative of discriminatory intent").

In sum, Plaintiff fails to present sufficient evidence to show that Defendant discriminated against him because of his race. Thus, summary judgment is appropriate on Plaintiff's claims of disparate treatment.

## B.    Hostile Work Environment

Plaintiff asserts Defendant created a hostile work environment by failing "to condemn the actions of the Defendant's employees or to even investigate the actions reported by the Plaintiff." Plaintiff's Response p. 19. Title VII's prohibition of race discrimination includes creating or allowing a hostile work environment based on race.   EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir.2009).   To establish a hostile work environment claim, Plaintiff must show that (1) he was harassed because of his race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to his employer. Gilliam v. South Carolina Department of Juvenile Justice, 474 F.3d 134, 142 (4th Cir.2007); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir.2003) (en banc). Defendant argues that Plaintiff fails to establish that the harassment about which Plaintiff complains was because of his race or that it was sufficiently severe or pervasive to create an abusive working environment.

Plaintiff asserts that he was harassed with respect to decisions he made regarding two

-20-

defendants that appeared in front of him. To the extent these actions amount to harassment, Plaintiff

cannot show that they were taken because of Plaintiff's race. In fact, Plaintiff asserts that non-race-

based reasons  motivated the actions against him. Plaintiff testified that the hostile environment he

claims to have experienced was because Lake City officials were trying to politically pressure Plaintiff

into breaking the law in connection with matters involving two defendants, Fagan and Ranson, and

others:

> Q. Let me make sure I'm clear. You described the situation with Fagan and with
> Gwendolyn Ranson and some other facts. Is my understanding clear that you are saying
> that because you refused to rule in the way that the city officials wanted you to do . .
> . and refused to submit to the pressure, whether it's political or other.
>
> A. Right, political. Yeah.
>
> Q. Political pressure they were putting on you that that is the cause of all the hostile
> environment –
>
> A. Correct.

Plaintiff Dep. p. 88-89. Plaintiff further testified: "[T]hey wanted me to break the law and go from

there. So basically that consist of harassment and a hostile work environment." Plaintiff Dep. p. 78.

Even assuming Plaintiff's allegation to be true – that Lake City officials were pressuring him to break

the law – that is not a basis protected by Title VII. See Lightner, 545 F.3d at 263-64 ("By the plaintiff's

own repeated admission, the real reason for his suspension was to cover up department wrongdoing.

This is not race or gender discrimination and therefore is not actionable under Title VII.").

Further, Plaintiff testified that after August 2007, he was supervised almost solely by assistant

city administrator Whittleton, an African American. Plaintiff Dep. pp. 61, 65-68. Lake City's Mayor

and Council had the final decision on Plaintiff's budget, employees, compensation, and appointment.

Plaintiff Dep. pp. 59, 176, 69, 104. Lake City's Mayor is African American, as are a majority of the

City Council. Plaintiff Dep. pp. 54, 61. Because members of Plaintiff's same protected class were

making the majority of the decisions regarding Plaintiff, there is an inference that no discriminatory motivation existed on the part of employer. See Martin v. Alumax of South Carolina, Inc., 380 F.Supp.2d 723, 733 (D. S.C. 2005) ("'Where the decision-maker is in the same protected class as the plaintiff, it is not likely the decision was motivated by discriminatory animus.'").

Finally, Plaintiff complains that at one point Lowder, a white male, called Plaintiff into a meeting and told him he was required to work every other weekend. Plaintiff presents nothing more than his own conclusory statements that this action was based upon race. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985) (holding conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion). Plaintiff fails to present sufficient evidence to allow a reasonable juror to conclude that the actions complained of by Plaintiff were based upon race. Thus, his hostile work environment claim fails and summary judgment is appropriate.

### C.     Retaliation

Plaintiff alleges Defendant retaliated against him for his complaints of discrimination, including his first filing with the EEOC. Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The burden-shifting framework set forth in McDonnell Douglas applies in retaliation cases. To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. Ross v.

Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan

Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803

(4th Cir.1998). If Plaintiff establishes a prima facie case, Defendant can rebut the presumption of

retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff has the

opportunity to prove that Defendant's legitimate, non-retaliatory reason is pretextual. Matvia v. Bald

Head Island Management, 259 F.3d 261, 271 (4th Cir.2001).

Plaintiff engaged in protected activity when he filed a Charge of Discrimination with the

EEOC. Laughlin v. Metropolitan Airports Authority, 952 F.Supp. 1129, 1133 (E.D.Va.1997), aff'd,

149 F.3d 253 (4th Cir.1998) (filing an administrative charge of discrimination is protected activity).

Informal, verbal complaints of discrimination made to a supervisor are also considered  protected

activity. Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir.1981). Plaintiff also filed the

present action prior to Defendant's decision not to reappoint him.  Defendant does not dispute that

Plaintiff engaged in protected activity.

Defendant argues that, other than his non-reappointment, Plaintiff cannot establish that any of

the actions he has complained of were adverse employment actions.  The Supreme Court has clarified

that a different and less strenuous standard is used to define adverse employment actions in the

retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the

substantive provision, is not limited to discriminatory actions that affect the terms and conditions of

employment." Burlington Northern & Santa Fe Rwy. v. White, 548 U.S. 53, 64, 126 S.Ct. 2405, 165

L.Ed.2d 345 (2006). However, the anti-retaliation provision "protects an individual not from all

retaliation, but from retaliation that produces an injury or harm." Id. at 67. Thus, "a plaintiff must show

that a reasonable employee would have found the challenged action materially adverse, which in this

context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted).

In his second charge of discrimination, filed in October of 2009, Plaintiff claimed that he was being retaliated against for filing his first charge in June because two members of the public had filed a complaint against him with the Commission on Judicial Conduct.  Plaintiff Dep., D. Ex. 7.  Certainly, for an employer to be liable for retaliation under Title VII, the retaliatory conduct must have been taken by the employer or imputable to the employer in some way.  Plaintiff has presented no evidence Defendant or any employee of Defendant filed or caused to be filed the complaints with the Commission on Judicial Conduct.  Thus, these complaints do not qualify as adverse employment actions.

On February 7, 2011, Plaintiff filed his third and fourth charges of discrimination against Defendant, the third claiming retaliation over the fact that he was not reappointed, and the fourth claiming Whittleton retaliated against Plaintiff by criticizing him for not being a team player, calling his doctor to verify a medical excuse, and requiring Plaintiff to train the newly-appointed Burgess as a municipal court judge.  Plaintiff Dep., D. Ex. 9, 10.  The actions complained of by Plaintiff in the fourth charge of discrimination do not rise to the level adverse employment action because they would not dissuade a reasonable employee from making or supporting a charge of discrimination.  Therefore, the only adverse employment action suffered by Plaintiff is his non-reappointment in January of 2011.

Defendants argue that Plaintiff cannot establish a causal connection between his protected activity and its decision not to reappoint Plaintiff in light of the fact that Plaintiff has identified other reasons why he believes he was not reappointed.  During an interview Plaintiff gave following his non-reappointment, he stated "that he felt council would not reappoint him, even if he hadn't sued the

-24-

city" and that "[y]ou have to be controlled to work there." Plaintiff Dep., D. Ex. 32. Plaintiff verified

that the statements he made during that interview were accurate, and that he was not reappointed

because he refused to be controlled by Lake City officials in the Fagan and Ranson incidents, in which

Plaintiff refused to do what he believed to be crooked. Plaintiff  Dep. p. 154 ("Basically with that

Gwendolyn Ranson case, with that case, that's why I'm going through what I'm going through now

with them."). Plaintiff gave the following testimony concerning the link between his

non-reappointment and the Ranson matter:

> Q. Do you think you weren't reappointed because you weren't willing to play this
> game?
> A. Yes. Correct. I wasn't willing to do what they wanted me to do. They want to tell
> you to do stuff that wasn't right and I held my ground and did what was right. They
> want you to do stuff that wasn't right. I did what was right and then went from there.
> Yeah, that's why I wasn't. Because if I had did anything uncompromising, oh, I
> probably would've still been there, because then they would've had something on
> me.

Plaintiff Dep. pp. 191-92. Because Plaintiff has testified that it was his refusal to be controlled or

engage in illegal activity – and not retaliation for protected activity – that led to his not being

reappointed, he cannot establish a causal connection between his protected activity and his non-

reappointment.

Furthermore, even if Plaintiff has established a prima facie case of retaliation, Plaintiff presents

no evidence to show that Defendant's legitimate, non-retaliatory reason for declining to reappoint him

is pretext for a retaliatory reason.  Whittleton avers that Defendant failed to reappoint Plaintiff because

of concerns about his performance and effectiveness in light of the multiple complaints made against

him and his actions.  Whittleton Affidavit.  Plaintiff fails to present evidence sufficient to raise a

genuine dispute of fact that this reason is pretext.  Thus, Plaintiff's retaliation claim fails.

-25-

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary

Judgment (Document # 35) be granted and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III

Thomas E. Rogers, III

United States Magistrate Judge

January 25, 2012

Florence, South Carolina

**The parties are directed to the important notice on the following page.**